IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES R. THOMPSON AND
CLIFFORD M. WEINER,

Plaintiffs,

v.                                                                  No. 12-CV-276 MCA/SMV

DAPHNE GAMMON,
MARTHA SCHUETZ,
NANCY E. WALKER,
JOHN DEWITT,
CATHY DEWITT,
and MARK F. REED,

Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Plaintiff James R. Thompson's Motion for Partial Summary Judgment and Memorandum in Support*. [Doc. 85] The Court, having considered the submissions, the relevant case law, and otherwise being fully informed in the premises, hereby **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.

**BACKGROUND**

This is an easement dispute regarding a path[1] that runs from El Salto Road North towards the parties' properties. [Doc. 30, ¶¶ 12-21, 35; Doc. 36, ¶ 25; Doc. 37 ¶ 25] Plaintiffs seek a declaratory judgment stating, *inter alia*, that Defendants' claimed easement does not encumber Plaintiff Thompson's land and that Plaintiff Weiner has not

---

[1] This path is in part an improved gravel road and in part a dirt track. The Court uses the word path to describe the way as a whole, as distinguished from just the improved, gravel road and just the dirt track.

1

obstructed any express easement, or that Defendants' express easement was abandoned. [Doc. 30, ¶ 35]  Ms. Gammon and Ms. Walker filed counter-claims against Mr. Thompson and Mr. Weiner, bringing actions to quiet title to their claimed easement [Doc. 36, ¶¶ 27-30; Doc. 37, ¶¶ 27-30]; for trespass based on the purported obstructions of the easement [Doc. 36, ¶¶ 31-37; Doc. 37, ¶¶ 31-37]; for ejectment from the easement [Doc. 36, ¶¶ 38-39; Doc. 37, ¶¶ 38-39]; and for a permanent injunction against Plaintiffs blocking the easement [Doc. 36, ¶¶ 46-49; Doc. 37, ¶¶ 46-49].[2]  This matter is before the Court on Plaintiff Thompson's Motion for Summary Judgment on Defendants Gammon and Walkers' counter-claims.  [Doc. 85]

The parties own adjoining land in a mountainous area of Taos County known as "El Salto."[3] [Doc. 89-1; Doc. 18, ¶ 2] Walking Rain Road (hereafter referred to as either "the Road" or "the Path") runs north from El Salto Road, and at places runs just inside Thompson's property's eastern border. [Doc. 7-3, 7-5]  Though physically the Path runs within Thompson's property, recorded documents show a fifteen foot platted easement for ingress, egress and underground utilities running entirely within the borders of the properties to Thompson's east. [Docs. 7-3; 7-5; Doc. 89-1]  These properties include the southern-most parcel along Thompson's eastern border (hereafter the Weiner property), and the adjacent parcel of land (just north of the Weiner property) along Thompson's

---

[2] Gammon and Walker also brought nuisance claims, which the Court dismissed.  [Doc. 83, p. 9]

[3] The parties do not set out the lay of the properties in their motion for summary judgment, response or reply, though they did submit documentary evidence setting forth such facts in briefing on earlier Motions.  For clarity, the Court describes the relative locations of the properties and the Path.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

eastern border, owned now by Defendant Daphne Gammon.[4] [Doc. 7-3; 89-1] Reed, another Defendant, owns property north of Gammon. [Doc. 89-1] The DeWitts, Defendants who failed to answer [Doc. 64], own property north of Reed. [Doc. 89-1] Defendant Walker owns property north of the DeWitts. [Doc. 89-1] Gammon and Walker claim that the Path is the means of access to their properties. [Doc. 36, ¶ 17; Doc. 37, ¶ 17]

In 2011, Thompson erected a gate and wall on his property, which obstructs the Path and Gammon and Walker's access to their property. [Doc. 89-1] Thompson built his gate and wall north of the Weiners' driveway, and the gate and wall do not to obstruct access to the Weiner property. [Doc. 89-1] In the area platted for the easement, Weiner erected rock landscaping, which, Gammon and Walker state, creates an obstacle to relocating the Path to the platted area and which, along with the steep slope of the terrain in the area generally and in the area of the platted easement, obstructs their access to their property via the platted easement. [Doc. 89-2, p. 6, 77:9-24; Doc. 89-3, p. 4, 40:11 to 41:2; Doc. 89-1]

Walking Rain Road is gravel up to Thompson's newly erected gate. [Doc. 19-1; Doc. 7-4] Thompson testified that:

> Walking Rain Road was—is—up to the point at which it ends on my property is a prepared roadbed. It is graded, it's crowned, it has gravel on it. What is depicted here as an existing dirt road is more what I would call

---

[4] This property was previously owned by Gottfried Schuetz and Daphne Gammon, husband and wife. Gammon and Mr. Schuetz divorced and Mr. Schuetz subsequently died, leaving his interest in the property to his sister, Martha Schuetz. [Doc. 91] Ms. Schuetz was originally a Defendant in this case, but she deeded her interest to Ms. Gammon and has now been dismissed as a party. [Doc. 95]

>   a dirt track. It's narrow, it's unprepared, unfinished, and, as I said, very
>   narrow. So it would be difficult to drive a vehicle on it. So I don't think of
>   that as Walking Rain Road, no.

[Doc. 89-3, p. 4, 39:3-11] He testified that past his gate the dirt track is "not usable as a road." [Doc. 89-3, p. 3, 32:20-22] Gammon, however, testified that she used the path to drive up to her property. [Doc. 89-2, p. 7, 79:21 to 80:14]

In his *Motion for Summary Judgment*, Thompson relies on four purportedly undisputed facts. First, he submits that Gammon has seen no written deed, agreement or document describing an easement across Thompson's property. [Doc. 85, ¶ 1] Gammon and Walker respond that this fact is immaterial, but offer no evidence of any recorded instrument stating that they have an easement across Thompson's property. [Doc. 89, ¶ A] Second, Thompson submits the following exchange from the deposition of Robert Watt, a Taos County surveyor, to show that there is no written agreement to the location of the easement:

>   Q.   Have you seen any similar document that in writing says where the
>        dirt track is supposed to be?
>   A.   I don't believe there's any document that shows the – I have not seen
>        a document that shows where that dirt track is.

[Doc. 85-1, pp. 8-9, Doc. 85, ¶ 2] Gammon and Walker submit that this testimony is inadmissible[5] and that it is disputed by other testimony by Mr. Watt that he has seen the road on "some plats" since 1998. [Doc. 89, ¶ B; Doc. 89-4, p. 3, 95:14-22] Third,

---

[5] Gammon and Walker argue that this testimony is inadmissible because it is improper opinion testimony, lacking foundation, and speculative. The Court does not find that consideration of this testimony is necessary to decide this Motion and therefore does not address these arguments.

4

Thompson submits the language from a *Final Decree in Suit to Quite Title*[6] entered on April 29, 1987, which states that Gammon's property is:

> Subject to an easement fifteen feet (15') wide for ingress and egress and underground utilities, which easement runs generally along the west boundary of the tract described above to the property of Randolph F. Reed, as described in Deed recorded in Book A-140 at page 892, and to property formerly of John and Kathryn S. DeWitt, as described in Deed recorded in Book A-149 at page 515, records of Taos County. It is understood that this easement shall be located on the ground along the most topographically feasible route to said properties. The route shall be mutually agreed upon by Plaintiffs [Ms. Gammon and her former husband], Randolph F. Reed and John and Kathryn DeWitt or their assigns before actual construction of such easement begins.

[Doc. 85, ¶ 3; Doc. 85-1, pp. 22-23]   Gammon and Walker submit that this fact is immaterial and in fact supports their claimed easement. [Doc. 89, ¶ C]   Finally, Thompson submits that Gammon and Walker admit that there is an actual controversy between the parties as to whether there is an easement across Thompson's property. [Doc. 85, ¶ 4]   Gammon and Walker do not dispute this fact and submit that it is immaterial to Thompson's motion for summary judgment. [Doc. 89, ¶ D]

Thompson testified that, from 2004 to 2011 he had not seen anyone drive up the Path on his property. [Doc. 89-3, p. 3, 33:9-25]  Gammon and Walker submit Gammon's testimony that the path in issue existed before she and her husband purchased their property in the 1960s. [Doc. 89-2, p. 7, 79:21 to 80:13]  Gammon does not offer any testimony as to how often she used the purported easement to visit her property. [*See* Doc. 89-2, p. 2, 13:24-25]  Walker testified that she went to her property only one time in

---

[6] Gottfried Schuetz and Daphne Gammon filed a quite title action and obtained a decree quieting title to their property. [Doc. 85-1, pp. 12, 22-23]

1996, that she and her then-husband drove up the Path, which was entirely a dirt road, until it ended, and that she then walked the rest of the way to her property. [Doc. 89-5, p. 3, 6:15 to 7:2]

Additional facts are set forth as necessary, below.

**ANALYSIS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted).

> The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." [*Liberty Lobby*, 477 U.S.] at 252, 106 S.Ct. at 2512. In making the decision, the trial judge must consider all the evidence in the light most favorable to the nonmoving party. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975). Thus, the trial judge must deny motions for summary judgment when reasonable jurors might disagree, even though the judge as trier of fact would find for the moving party.

*Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988).

Defendants argue that they are seeking "a decree of quiet title based on express, implied and prescriptive easement, trespass, ejectment or injunctive relief." [Doc. 89, ¶ A] Thompson disagrees, arguing that Gammon and Walker: 1) did not allege a prescriptive easement in their counterclaims, and 2) "provide no evidence to support a claim for any easement or property right, which is a necessary element for all of their counts." [Doc. 93, p. 1] The Court addresses the issues thus framed by the parties and sets forth additional facts as necessary below.

**Express Easement**

In their Response brief, Gammon and Walker do not identify a specific document which they claim establishes their express easement.[7] They refer to the *Final Decree in Suit to Quiet Title* (stating that it "supports Defendants' Counterclaims" and confirms the "existence of the road") [Doc. 89, 7-8], however, the Court cannot conclude that this document supports Gammon and Walker's claim to an express easement over

---

[7] Gammon and Walker stop just short of conceding that they do not have express easements by stating "since one of Gammon's and Walker's claims is to a prescriptive easement… the existence of a written agreement would be wholly immaterial." [Doc. 89, ¶ B]

7

Thompson's property.  The *Final Decree in Suit to Quiet Title* specifically states that the easement runs across Gammon's property and other properties to the east of Thompson's property.  [Doc. 85-1, pp. 22-25]  The *Final Decree* states that "[i]t is understood that this easement shall be located on the ground on the most topographically feasible route to said properties.  The route shall be mutually agreed upon by Plaintiffs, Randolph F. Reed and John and Kathryn DeWitt or their assigns before actual construction of such easement begins."  [Doc. 85-1, p. 23]  However, the record contains no evidence indicating that Thompson's predecessors in interest were parties to the action or that the Thompson property is addressed in the *Final Decree*.  [*See* Doc. 85-1]  Thus, the *Final Decree* cannot be read to state that the express easement could be located on Thompson's property.  Rather, the *Final Decree* must be read to state that the easement, when built, would be on the most topographically feasible route on the properties which it expressly burdens, including Gammon's.  [*See* Doc. 85-1, pp. 22-23]

       The record here suggests that there may in fact be documents which set forth an express easement burdening Thompson's property and benefitting Gammon or others.  For example, the *Final Decree in Suit to Quiet Title* states that there are recorded easements to Plaintiffs (Gammon and Schuetz) from various others [Doc. 85-1, p. 23], but the parties have not put those documents into the record of an express easement over what is now Thompson's land.  Further, attached to an earlier Motion, Gammon filed a copy of a deed for what is now Thompson's property from Justin Clayton to Cliff and Lori Weiner (who in turn deeded the property to Thompson).  [Doc. 7-8]  This deed states that it is subject to various easements, including those "contained in Warranty Deed from

8

Don B. Pennington and Terry H. Pennington . . . to Justin Clayton." [Doc. 7-8, p. 2] However, that document is not included in the record by either party to establish what the easement was, who it benefitted and who it burdened. At this stage the duty was on Gammon and Walker to produce evidence establishing the express easement.

In addition, the Clayton to Weiner deed states that Thompson's property is subject to the "Bylaws Walking Rain Road recorded in Book M-193, Pages 806-813 and Amendments to Bylaws, recorded in Book M 306, Pages 890-891, records of Taos County, New Mexico." [Doc. 7-8, p. 2] Those Bylaws and Amendments are not in the record. However, the Bylaws and Amendments were rescinded and replaced by a document which is in the record, the *Articles of Association and Rules & Regulations of Walking Rain Road Association*, filed with the Taos County Clerk on November 4, 2004. [Doc. 7-6, p.1] In Exhibit A to the *Articles of Association*, Gottfried Schuetz, James Thompson, and T.S.E. Interests, Ltd. (Weiner's predecessor in interest) are listed as owners of "Benefitting Tracts," but not Member Tracts, to the *Articles of Association*.[8] [Doc. 7-7, pp. 3-4] These *Articles of Association* state that the Association was formed in 1997 by the property owners listed in Exhibit A. [Doc. 7-6, p. 1] The *Articles of Association* state that they "rescind and replace, in their entirety, BYLAWS of WALKING RAIN ROAD ASSOCIATION, recorded in Book M-193 . . . Records of Taos County" and specified Amendments to the Bylaws (none of which are in the record). [Doc. 7-6, p. 1] The *Articles of Association* further state:

---

[8] Neither Walker nor any of her predecessors-in-interest (at least as discernible from the record before the Court) are listed as an owner of a benefiting tract. [Doc. 7-7, pp. 3-4]

9

Whereas, the Parties are all presently owners of tracts of land accessed by Walking Rain Road; and whereas these tracts are real property benefited and burdened by easements which are hereby recognized and acknowledged as part of this agreement; and whereas the Parties desire to continue a road association for the benefit of all Parties to provide for the maintenance of the roadway;

. . .

1.3 Benefiting Tracts:

All those parcels of land described in Exhibit A, having a right or fact of access to the Roadway. . . . Owners of Benefiting Tracts are eligible for membership in the Association. No Benefiting Tract shall be subject to these Articles of Association and Rules & Regulations unless and until the owner becomes a member of the Association.

. . .

1.6 Maintenance

Maintenance shall include the repair and upkeep of the existing Roadway, and the clearing of snow and other natural obstructions, adequate for year-round motor vehicle access to Benefiting Tracts. . . . Nothing herein shall create an obligation to develop, extend, or ramify the Roadway.

. . .

2.2.1. Non-member Owners of Benefiting Tracts, Collection for Benefit of Maintenance

Any maintenance undertaken by the Association provides comfort, safety and enhanced property value to all Benefiting Tract owners. Such benefit is not voluntary as to non-member owners of those tracts. The value of the benefit to the non-member will be calculated by an apportionment of cost of the maintenance as if the non-member had been a member, and may be charged against the non-member in order to prevent his or her unjust enrichment. Collection of these charges may be pursued as provided by law.

. . .

13. Limitation of Use

The parties hereto agree to limit use of the Easements to uses customarily appurtenant to residential use.

. . .

15. Binding Nature

These Articles of Association and Rules & Regulations shall be binding upon Members, their heirs, assigns, and successors in title, upon execution of a Membership Agreement, whether or not they shall have taken title prior to its execution. These Articles of Association and Rules & Regulations benefit and burden the lands described hereunder and shall run with the land. All purchasers of land, their heirs, assigns and successors,

>governed by a Membership Agreement shall automatically become subject to the terms of these Articles of Association and Rules & Regulations.

[Doc. 7-6 to Doc. 7-7]

Thompson's uncontroverted testimony is that Walking Rain Road is maintained up to his gate, which is on his property. [Doc. 89-3, p.4, 39:3-11] This is evidence that the Road referred to by the Walking Rain Road Association's *Articles of Association* crosses onto Thompson's property. This evidence, the Warranty Deed of record listing Thompson's property as subject to the Bylaws (which were replaced by the *Articles of Association*) and the fact that the properties of Gammon, Thompson and Weiner are all listed as benefiting tracts suggest that some documents may exist somewhere which discuss an express easement across Thompson's property for some length of the "Road." However, at this stage in the litigation, Gammon and Walker had the duty to produce those documents, and they have failed to do so. Specifically lacking is evidence of the express easement or evidence that Thompson or his predecessor or Gammon or her predecessor ever agreed to or signed a Membership Agreements agreeing to the express easement set forth in the *Articles of Association*. Therefore, again, Gammon and Walker have failed to meet their burden to produce evidence of an express easement. Fed. R. Civ. P. 56(a), (c).

Accordingly, summary judgment for Thompson is granted on the question of whether Gammon and Walker have an express easement on Thompson's property.

**Prescriptive Easement**

Gammon and Walker also submit that they have a prescriptive easement across Thompson's property. "An easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen v. Sutin*, 61 P.3d 176, 180 (N.M. 2002) (following *Restatement (Third) of Property: Servitudes* §§ 2.16, 2.17 (2000)). Thompson argues that Gammon and Walker's claim of a prescriptive easement fails for three reasons: 1) Gammon and Walker did not allege a prescriptive easement in their Counterclaims[9] [Doc. 93, pp. 1-4]; 2) Gammon and Walker failed to produce evidence of each element of a prescriptive easement [Doc. 93, p. 1] and 3) in discovery, Gammon and Walker denied facts necessary to prove the elements of a prescriptive easement. [Doc. 93, pp. 4-5; Doc. 93-1, 9-10, 23-24, 32-33, 45-46]

Though far from a model of pleading, the Court concludes that Gammon and Walker met the requirements of pleading set forth in Federal Rule of Civil Procedure 8(a), *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff is correct that Gammon and Walker failed to use the words "prescriptive easement" in their Counterclaims (though, in their Answers, each stated that "as of the filing of the SAC, she claims a prescriptive easement for the benefit of the [Gammon/Walker] property across property owned by Thompson"). [Doc. 36, ¶¶ 7, 14-49; Doc. 37, ¶¶ 7, 14-49] However, Gammon and Walker alleged that Walking

---

[9] Thompson also argues that Gammon and Walker failed to identify the issue of a prescriptive easement in their Joint Status Report. [Doc. 93, pp. 2, 4] While the failure to identify an issue in a Pre-Trial Order may be grounds for refusing to consider the issue at trial, *see* Fed. R. Civ. P. 16(d), (e), this is not the case with a Joint Status Report. Thus, the only relevant inquiry is whether the party stated a claim in his or her Complaint.

Rain Road is the access to their properties as well as Thompson and Weiner's properties. [Doc. 36, ¶¶ 17, 18; Doc. 37, ¶¶ 17, 18]  They further alleged that Walking Rain Road deviates from the boundaries of the 15 foot recorded easement, and one of the deviations is onto Thompson's property.  [Doc. 36, ¶¶ 20, 21; Doc. 37, ¶¶ 20, 21]  Gammon and Walker alleged that they, along with Thompson and Weiner, were all members of the Walking Rain Road Association.  [Doc. 36, ¶ 19; Doc. 37, ¶ 19]  Walker alleged that "For more than ten years, Walker has accessed her property from Walking Rain Road, as it crosses the property now belonging to Thompson."  [Doc. 37, ¶ 22]  Gammon alleged that "For more than fourteen years, Gammon has accessed her property from Walking Rain Road, as it crosses the property now belonging to Thompson."  [Doc. 36, ¶ 22]

"[T]he 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1772 (10th Cir. 2015).  Thus, the Court accepts as true all well-pleaded factual allegations and views them in the light most favorable to the claimant. *Id.*  A reasonable inference from the facts alleged by Walker and Gammon, (particularly their alleged membership in the Walking Rain Road Association) is that their use of the Path was open or notorious. *Luevano v. Maestas*, 874 P.2d 788, 793 (N.M. Ct. App. 1994) (holding that documentary and testimonial evidence of belief that road was public was evidence as to the reputation of the use of the road).  Both Gammon and Walker alleged that they used the Path for the prescriptive period, and a reasonable inference therefrom is that they did so without interruption. [Doc. 36, ¶ 22; Doc. 37, ¶ 22]  Finally, "if all of the other

13

elements of a prescriptive easement claim are satisfied, the use is presumed to be adverse in the absence of proof of express permission." *Algermissen*, 61 P.3d at 181. There was no allegation of permissive use. Thus, based on the allegations in the counterclaims, this presumption could potentially be applied, and therefore, all of the elements of a prescriptive easement were sufficiently pleaded in the Counterclaims. *Iqbal*, 556 U.S. at 678 ("the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (internal quotation marks and citations omitted)).

Thompson next argues that, not only did Gammon and Walker fail to submit evidence of each of the elements of a prescriptive easement, they disavowed claiming that their use of the easement across Thompson's property was: notorious; visible; without permission; open and known to Thompson; uninterrupted for the last 20 years; continuous or normal for the past 20 years; and widely known in the neighborhood for the last 20 years. [Doc. 93-1, pp. 9, 23-24, 32-33, 45-46] Indeed, in their discovery answers, Gammon and Walker ill-advisedly forwent an opportunity to produce evidence to survive summary judgment by blanketly denying making such claims and refusing to produce their evidence (even if their denials were based on objections to the wording of the discovery questions stating that Gammon and Walker made the particular "claim" or "contention" [Doc. 93-1, p. 52]). Nor is their deposition testimony of any help to them. Gammon does not state how often she used the easement. [Doc. 89-5, p. 3, 6:12-18] Walker only used the easement once in 1996. Thus, neither produced testimony that they personally used the easement with the frequency necessary to be open and notorious.

14

However, the Court must conclude that the *Articles of Association and Rules & Regulations of Walking Rain Road Association* create a question of fact as to whether Gammon's use of the Road, to the extent it was maintained, was open and notorious. [Doc. 7-7, p.4] The *Articles of Association* list Gammon's ex-husband as the owner of a benefiting tract. This is evidence that it was known or believed by the drafters of the *Articles of Association* that the owner of Gammon's property used the easement to access the property. [Doc. 7-6, p. 7-7, p. 4] In turn, Thompson was advised that his property was "[s]ubject to . . . Bylaws Walking Rain road" as described in the Deed from Justin Clayton to his predecessors-in-interest. [Doc. 7-8, pp. 1-2] Based on the date of the *Articles of Association* (which indicate the Road Association was formed in 1997), there is evidence that Gammon used the Path without interruption from at least 1997[10] to 2011, which is longer than the prescriptive period. Finally, when the other elements of an easement by prescription are met, and in the absence of evidence of permissive use, adversity may be presumed. Accordingly, Gammon has produced evidence from which a reasonable juror could conclude that she has a prescriptive easement.

Walker has not produced evidence that either she or one of her predecessors in interest was a member to the Road Association. Thus, unlike Gammon, she cannot potentially establish notorious use based on the language of the Road Association *Articles of Association.* However, Thompson has not argued, nor have the parties presented legal authority, on whether Walker may claim a prescriptive easement over Thompson's

---

[10] Further, Gammon testified that she used the Path since the late 1960s. [Doc. 89-2, p. 7, 80:2-12]

property where Walker potentially holds an express easement over Gammon's property, and Gammon potentially holds a prescriptive over Thompson's property. Because the matter was not briefed, the Court declines to decide that Thompson is entitled to judgment as a matter of law on this issue. Further, as to both Gammon and Walker, the survey documents, plats, *Articles of Association* of the Road Association, along with the obvious nature of the passageway, even if it was a dirt tract, which went onto and beyond Thompson's property (back on to Gammon's property), to land which Thompson should have known was held by other property owners, there is a genuine issue of material fact as to whether Thompson was on notice of open and notorious use of the easement by the down-the-road landowners, including Gammon and Walker. *See Sanchez v. Dale Bellamah Homes of N.M., Inc.*, 76 N.M. 526, 529-30 (N.M. 1966) (stating that, along with other facts showing notorious use, a well-defined road shown on U.S. Geological map prepared several years earlier put property owner and its predecessors on notice of use of the road); Restatement of the Law (Third) Property: Servitudes§ 2.17 p. 276, illustrations 23 and 24.[11]

---

[11] The illustrations state as follows:

> 23. A road in a rural area runs from a state highway through Blackacre, past Whiteacre and several other residential properties, to a river. The road is used by the public for access to the river for fishing, boating, and picnicking. It is regularly used by A, the owner of Whiteacre, and owners of the other residential properties for access to their homes. The fact that the road serves the residential properties, as well as providing access to the river, would justify the conclusion that use by A and the other residential owners is open and notorious.

The Court concludes that, viewing the evidence in the light most favorable to Gammon and Walker, there is evidence in the record of each element of an easement by prescription. Accordingly, on this ground, Thompson's motion for summary judgment on the claimed prescriptive easement is denied.

**CONCLUSION**

**WHEREFORE, IT IS HEREBY ORDERED:**

Thompson's Motion for Summary Judgment [Doc. 85] is DENIED-IN-PART with regard to Gammon and Walker's alleged prescriptive easement and GRANTED-IN-PART as to an express easement.

**SO ORDERED** this 24th day of September, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Court

---

24. Whiteacre lies behind Blackacre, which is used for a carwash and motel. A privately owned road extends from the public street across Blackacre to Whiteacre. The first 30 feet of the road is used by the public for access to the motel and carwash. A, the owner of Whiteacre, uses the entire road for access to Whiteacre. The fact that the road extends to Whiteacre would justify the conclusion that A's use of the road is open and notorious.